IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| NUTRA HEALTH, INC., <br> DIXIE HEALTH AND WELLNESS, <br> INC., and KINGA DOLHA <br><br> Plaintiffs, <br> vs. <br><br> HD HOLDINGS ATLANTA, INC., <br> TERVE SINA WELLNESS, INC. and <br> W. MARK HEISER, in his official and <br> Individual capacities, <br><br> Defendants. | CIVIL ACTION <br><br> FILE NO. 1:19-cv-05199-RDC |

**DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION TO ENFORCE SETTLEMENT AGREEMENT**

On October 14, 2021, the parties mediated the above-captioned matter and announced and memorialized the apparent settlement terms. [Doc. 144]. However, during the process of drafting the settlement documents, it became apparent that the parties did not reach a meeting of the minds with respect to a number of terms. *Ford v. Citizens and Southern Nat. Bank, Cartersville*, 928 F.2d 1118, 1120 (11th Cir. 1991) ("A meeting of the minds is a prerequisite to the formation of settlement agreements under Georgia law."). Specifically, three issues arose: 1) the parties disagreed about the scope of the purported agreement; 2) the parties disagreed about

the marks and products at issue; and 3) Plaintiffs have insisted on including new terms prohibiting Defendants from reporting criminal activity to law enforcement into the purported settlement. As a consequence of Plaintiffs' refusal to agree to settlement documents which accurately memorialize the agreed upon terms, the settlement has not been ratified.

As an initial matter, notably, Plaintiffs' brief does contain a substantially accurate, although incomplete, account of the agreement as understood by Defendants:

> Defendants' insurer, Selective Insurance Company of America, shall pay $80,000 to Plaintiffs to settle Plaintiffs' claims. To settle Defendants' counterclaims, Plaintiffs shall: (i) pay $40,000 to Defendants, (ii) assign any and all purported rights to the disputed trademarks at issue in the litigation (*i.e.*, Dermal-K, Vaso-Profin, Super-Testron) to HD Holdings, and (iii) consent to the entry of a permanent injunction in favor of Defendants. Finally, the parties agreed to execute mutual releases and a consent judgment that would include mutual no contact, no harassment, and non-disparagement provisions. Furthermore, the parties contemplated that this settlement would also cover all claims asserted in the Gwinnett County litigation…

[Doc. 149, p. 4]. These terms are some of the terms agreed upon by Defendants. However, Plaintiffs' summary fails to include that "the agreement contemplates that all rights to all the intellectual property at issue will be transferred from plaintiffs to defendants…". [Doc. 132-1; *Transcript of Settlement Conference via Zoom Proceedings Before the Honorable Alan J. Baverman* ("Transcript"), p. 5:1-3].

Plaintiffs also omitted that "this would resolve any pending actions in the United States Patent and Trademark Office...to the extent there is anything pending between the plaintiffs and defendants, these assignments would resolve all of those." [Doc. 132-1; *Transcript*, p. 5:10-14].

It is not in dispute that, at the time of the announcement of the purported settlement, an ongoing dispute was pending between the Plaintiffs and Defendants in the United States Patent and Trademark Office ("USPTO") over the BETA YAM 900 mark (see Serial No. 88602275; USPTO Proceeding No.91254138). In fact, on May 19, 2020, Plaintiffs' own attorney Robert Bexley, on behalf of Plaintiff Nutra Health, Inc., moved to stay that USPTO litigation due to this litigation pending in the North District of Georgia. Mr. Bexley attached Plaintiffs' complaint in this case to that motion. Mr. Bexley wrote:

> Suspension of this proceeding pending the final determination of the federal court action is warranted since the ***ownership issue of the BETA YAM 900 mark will be decided in the civil action***…(emphasis added).

*See* [Doc 151-1, p 2].[1]

---

[1] The Court may take judicial notice of USPTO documents. *See S.E. Clinical Nutrition Centers, Inc. v. Mayo Found. for Med. Educ. & Research*, 135 F. Supp. 3d 1267, 1271 (N.D. Ga. 2013); *see also Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005); *Basson v. Mortgage Electronic Registration Systems, Inc.*, 741 Fed. Appx. 770, 770-71 (11th Cir. 2018).

Plaintiffs' assignment of any interest in the BETA YAM 900 mark is a material part of any settlement agreement. Without such terms, there is no agreement.

Another claim made in *Plaintiffs' Motion To Enforce Settlement Agreement* is that the settlement documents drafted by Defendants "would restrict Plaintiffs from continuing to engage in the sale and distribution of the health and beauty supplements." [Doc. 149, p. 5]. Notably, the documents drafted by Defendants [Doc. 149, Exhibit 2] contain no such prohibition or restriction. The relevant language in the proposed Consent Judgment and Permanent Injunction is:

> Plaintiffs are permanently enjoined from the sale of any and all products bearing or using any of the intellectual property at issue in this case, including the marks Dermal-K, Vaso-Prophin, Super Testron, Beta Yam 900, and Dixie Health and Wellness ("Marks"). This *Consent Judgment and Permanent Injunction* contemplates that Plaintiffs have ceased using and are no longer marketing and selling the products at issue and/or any products bearing the Marks and orders that Plaintiffs are permanently enjoined from marketing, advertising, selling, or participating in commerce relating to the Marks and products at issue in this litigation, including Dermal-K, Vaso-Prophin, Super Testron, Beta Yam 900, and Dixie Health and Wellness.

[Doc. 149, Exhibit 2, p. 6]. Defendants agree that Plaintiffs are not precluded from operating in the health and beauty industry. However, Plaintiffs' conspicuous unwillingness to agree to the accurate terms presented, and attempts to renegotiate after apparently settling, tend to indicate their intent to solicit Defendants' customers, use Defendants' customer lists, or sell the same or nearly identical

products. The announcement of the settlement conference indisputably precludes Plaintiffs from selling both the same products and products bearing the same trademarks as Defendants' products:

> The temporary injunction issued will become permanent, and it will cover all **products <u>and</u> all intellectual property** at issue in the litigation. And if the temporary injunction is limited to any extent, the permanent injunction would be more broad. It would clearly cover everything – **products <u>and</u> intellectual property** at issue in the case.

[Doc. 132-1; *Transcript*, p. 5:16-21 (emphasis added)].

> Plaintiffs' counsel agreed to those terms:
>
> It is contemplated – it is my understanding that the plaintiffs are no longer in this industry. They are not selling these products pursuant to the injunction. The – there will be mutual releases.
> Mr. Peacock: I just want – I want to be clear that as far as – that is not part of – her being out of the industry completely is not necessarily part of the agreement. **She won't be selling these products**, Vaso-Prophin, Super Testron.
> Mr. Tartline: Right. When I say industry, I'm talking about, I guess, the industry relating to the **products <u>and</u> intellectual property** that are at issue in the case.
> …
> Mr. Peacock: **Some other Vaso-Prophin-<u>type</u> product**, you know, no – enhancer or whatever, she could that if she still wants to be in this industry. I don't know that she does. But I'm just saying.

*Id*. at 6:1-19 (emphasis added). At no point have Defendants attempted to preclude Plaintiffs from selling health and beauty products. Instead, Defendants have simply maintained that Plaintiffs cannot sell Defendants' products or products bearing Defendants' trademarks. Plaintiffs' insistence on an unnaturally broad interpretation

- 5 -

of the settlement announcement shows either that there was no meeting of the minds or that Plaintiffs, in bad faith, intend to continue selling Defendants' products and intellectual property.

Finally, there was no discussion at any point regarding any "provisions whereby the parties agree to not pursue criminal charges for any alleged criminal acts that occurred prior to the date of the settlement," until long after the mediation. No such provision was part of the settlement of this matter as announced before Judge Baverman. "Non-disparagement" never contemplated refusing to truthfully answer questions posed by law enforcement. Plaintiffs contend a non-disparagement provision precludes Defendants from reporting any crimes committed by Plaintiffs. [Doc.149-3 "[non-disparagement] would include going down to the police station to file a report accusing the other of a crime"]. Plaintiffs' insistence upon this provision simply begs the question of what crimes Ms. Dolha has committed. Regardless, Plaintiffs' claim that any provisions of the settlement related at all to "criminal charges," or "criminal acts" is complete fiction.

Settlement agreements are interpreted under the law of the forum state. *R.A.M., Ltd. Liab. Co. v. Hill*, 393 F. App'x 684, 686 (11th Cir. 2010).

> Georgia courts have held that **a motion to enforce a settlement agreement is properly analyzed using the same framework as a motion for summary judgment.** Under Georgia law, a settlement agreement must meet the same formation and enforceability

> requirements as any other contract. The required elements of a contract under Georgia law are: (1) parties that are able to contract; (2) consideration; (3) mutual assent of terms; and (4) valid subject matter of the contract. It is well settled that an agreement between two parties will occur only when the minds of the parties meet at the same time, upon the same subject matter, and in the same sense. [emphasis added, internal citations omitted].

*Berk v. Equifax, Inc.*, No. 1:20-CV-1279-TWT-CCB, 2020 U.S. Dist. LEXIS 255829, at *12 (N.D. Ga. Dec. 2, 2020).

The fact of the announcement of the settlement reached with Judge Baverman is not in dispute. [Doc. 144]. It is also not disputed that the announcement clearly includes that the settlement "would resolve any pending actions in the United States Patent and Trademark Office..." [Doc. 132-1; *Transcript*, p. 5:10-11]. Likewise, Plaintiffs cannot dispute the words of their own motion filed in the USPTO which states that "ownership issue of the BETA YAM 900 mark will be decided in the civil action." [Doc. 151-1, p 2]. It is also not disputed that the settlement announcement contains no discussion of criminal referrals or law enforcement.

Review of the undisputed evidence presented by both sides with respect to the purported settlement, including the transcribed settlement announcement, will lead to a finding that a settlement was reached, and that the terms of the settlement are accurately memorialized by the documents drafted by Defendants, Doc 149-2, pages 5-18. If the Court believes that Plaintiffs, in good faith, actually believe that they

bargained to retain the BETA YAM 900 mark and for an agreement that Defendants would not report any of Plaintiffs' alleged criminal conduct to law enforcement, then there simply could not have been any meeting of the minds and no settlement exists. But the undisputed evidence betrays Plaintiffs' contentions in this regard.

Defendants therefore request that this Court find that the settlement announcement reflects that Plaintiffs unequivocally agreed to the terms of the settlement as reflected by the settlement documents drafted by Defendants. Defendants further **request that the Court direct the parties to execute the settlement documents as drafted by Defendants per Doc. 149-2, pp. 5-18, and then dismiss this action while retaining jurisdiction to enforce the terms of the settlement agreement**.

Further, in view of Plaintiffs' apparent bad faith refusal to proceed with the agreed upon settlement terms and insistence upon demanding new terms not previously agreed upon, the Court should award Defendants all attorneys' fees incurred in responding to *Plaintiffs' Motion To Enforce Settlement Agreement*, as well as fees incurred in responding to related motions filed by Plaintiffs concerning their refusal to respond to discovery, Doc. 147 and Doc. 150.

(signature on the following page)

Respectfully submitted, this 31st day of January, 2022.

/s/ Wayne S. Tartline
Wayne S. Tartline
Georgia Bar No.: 698346
*Attorney for HD Holdings Atlanta, Inc., Terve Sina Wellness, Inc., and W. Mark Heiser*

BOVIS, KYLE, BURCH & MEDLIN, LLC
200 Ashford Center North, Suite 500
Atlanta, Georgia    30338-2668
Telephone:   770-391-9100
Facsimile:   770-668-0878
E-mail:       wst@boviskyle.com

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1

The undersigned hereby certifies that the foregoing document has been prepared in accordance with the font type and margin requirements of Local Rule 5.1 of the Northern District of Georgia, using a font type of Time New Roman and a point size of 14.

Respectfully submitted,

*/s/ Wayne S. Tartline*
*Attorney for HD Holdings Atlanta, Inc., Terve Sina Wellness, Inc., and W. Mark Heiser*